E-FILED
Friday, 29 September, 2017  12:22:14 PM
Clerk, U.S. District Court, ILCD

# IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
### SPRINGFIELD DIVISION

| | | |
|---|---|---|
| SAJIDA AHAD, MD, on behalf of herself and all others similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 3:15-cv-03308 |
| BOARD OF TRUSTEES OF SOUTHERN ILLINOIS UNIVERSITY and SIU PHYSICIANS & SURGEONS, INC., | ) ) ) ) ) ) | |
| Defendants. | ) | |

## OPINION AND ORDER

**SUE E. MYERSCOUGH, U.S. District Judge:**

Before the Court is Plaintiff Dr. Sajida Ahad's Motion for Conditional Collective Action Certification and Judicial Notice (d/e 32). For the reasons stated herein, Plaintiff's motion is GRANTED.

## I. BACKGROUND

Plaintiff brings this action under the Equal Pay Act (EPA), 29 U.S.C. § 206(d), part of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq. The EPA prohibits sex-based wage

discrimination between employees who perform jobs that require substantially equal skill, effort, and responsibility under similar working conditions.  The EPA permits employees to bring a collective action on behalf of themselves and others who are similarly situated against employers who allegedly violate the EPA. 29 U.S.C. § 206(d).

Plaintiff seeks conditional certification of a collective action by female faculty physician employees of Defendants: the SIU School of Medicine (governed by the SIU Board of Trustees) and SIU Physicians & Surgeons, Inc.  Plaintiff also requests the Court's authorization of her proposed notice to the class.  Finally, Plaintiff requests that the Court approve her as the named plaintiff for the collective action and approve her counsel to be the counsel for the collective action.

Plaintiff asserts that Defendants systematically paid her and other female physicians less than male physicians with similar experience, responsibility, and seniority.  Plaintiff has also asserted individual claims under the Illinois Equal Pay Act, Title VII of the Civil Rights Act of 1964, and the Illinois Civil Rights Act.

## II.  LEGAL STANDARD

Pursuant to section 16(b) of the FLSA, a plaintiff may bring a collective action on behalf of themselves "and other employees similarly situated."  29 U.S.C. § 216(b).  A prospective member of the collective action may "opt-in" by filing a written consent form in the court where the action is brought; a person who does not opt-in is not part of the FLSA collective action and is not bound by the court's decision.  <u>Gambo v. Lucent Techs., Inc.</u>, No. 05 C 3701, 2005 WL 3542485, at *3 (N.D. Ill. Dec. 22, 2005).

The FLSA does not detail the process a court should employ to determine whether potential class members are "similarly situated." <u>See</u> <u>Smallwood v. Illinois Bell Co</u>., 710 F. Supp. 2d 746, 750 (N.D. Ill. 2010), citing <u>Hoffmann–La Roche, Inc. v. Sperling</u>, 493 U.S. 165, 170–174 (1989).  Nor has the Seventh Circuit done so.  <u>Id.</u>  A majority of courts, including courts in this District, have adopted a two-step method to determine whether a plaintiff is "similarly situated" to putative class members.  <u>See, e.g.</u>, <u>North v. Bd. of Trs. of Ill. State Univ.</u>, 676 F. Supp. 2d 690, 694 (C.D. Ill. 2009); <u>Jirak v. Abbott Laboratories, Inc.</u>, 566 F. Supp. 2d 845, 847 (N.D. Ill. 2008) (collecting cases).

At Step 1, the court decides if a class should be "conditionally"

certified.  <u>See</u> <u>Russell v. Ill. Bell Co.</u>, 575 F. Supp. 2d 930, 933 (N.D.

Ill. 2008).  Accordingly, plaintiffs need only make "a modest factual

showing sufficient to demonstrate that they and potential plaintiffs

together were victims of a common policy or plan that violated the

law." <u>Bitner v. Wyndham Vacation Resorts, Inc.</u>, 301 F.R.D. 354,

357 (W.D. Wis. 2014) (internal citations and quotation marks

omitted).  The plaintiff's burden at Step 1 is minimal; the standard

is "fairly lenient" and does not involve "adjudicating the merits of

the claims, nor the kind of rigorous analysis typical of class

certification under Fed. R. Civ. P. 23." <u>Berndt v. Cleary Bldg. Corp.</u>,

No. 11-cv-791, 2013 WL 3287599, at *7 (W.D. Wis. Jan. 25, 2013).

"The 'modest factual showing' cannot be satisfied simply by

'unsupported assertions,' but it should remain a low standard of

proof because the purpose of this first stage is merely to determine

whether 'similarly situated' plaintiffs do in fact exist." <u>Myers v.</u>

<u>Hertz Corp.</u>, 624 F.3d 537, 555 (2nd Cir. 2010) (citations omitted).

Plaintiff must supply "some evidence, beyond pure speculation, of a

factual nexus between the manner in which the employer's alleged

policy affected her and the manner in which it affected other

employees." <u>Zavala v. Wal Mart Stores Inc.</u>, 691 F.3d 527, 536 n.4

(3d Cir. 2012) (internal quotation marks omitted); see also Molina v. First Line Solutions LLC, 566 F. Supp. 2d 770, 786 (N.D. Ill. 2007) ("Unless defendant admits in its answer or briefs that other similarly situated employees exist, plaintiffs cannot rely on their allegations alone to make the required modest factual showing."). The plaintiff need not supply "conclusive" support on the question, but rather need only supply "an affidavit, declaration or other support beyond allegations in order to make a minimal showing of other similarly situated [individuals] subjected to a common policy." Nehmelman v. Penn National Gaming, Inc., 822 F. Supp. 2d 745, 751 (N.D. Ill. 2011).

This evidence must demonstrate a "factual nexus that binds the plaintiffs together as victims of a particular violation of the" FLSA, although "a unified policy, plan, or scheme . . . is not necessarily required to satisfy the similarly situated requirement, especially if a collective action would promote judicial economy because there is otherwise an identifiable factual or legal nexus." Woods v. Club Cabaret, Inc., 140 F. Supp. 3d 775, 780 (C.D. Ill. 2015).

If the court concludes that the plaintiff has met her burden at

Step 1, the court certifies the conditional class and may order that
appropriate notice be provided to potential class members.  See id.
at 781.

Step 2 occurs after the conclusion of discovery and the opt-in
process is complete.  At this step, the court's inquiry is more
"stringent" than during Step 1.  With the benefit of discovery, the
court examines three factors: "1) whether the plaintiffs share
similar or disparate employment settings; 2) whether affirmative
defenses raised by the defendant would have to be individually
applied to each plaintiff; and 3) any fairness and procedural
concerns."  Id.  Also at Step 2, the court may revisit the "similarly
situated determination" and make a final ruling on the certification.
North, 676 F. Supp. 2d at 695.

At this stage in the litigation, then, plaintiff's motion requires
analysis only under the first step of the two-step method.

### III.  ANALYSIS

A.  Plaintiff has made a sufficient factual showing that she is
similarly situated to proposed collective action members who are
affected by a process that potentially violates the EPA.

Instead of the lenient standard described in the preceding
section, Defendants ask the Court to deny certification under a

stricter standard.  Defendants seek to apply what is known as the intermediate standard because a substantial amount of discovery has taken place.  Under the intermediate approach, the lenient standard of Step 1 is somewhat more stringent to require the plaintiff to present evidence that potential plaintiffs are similarly situated both in being subject to an unlawful compensation plan and in their job duties and circumstances.  Kurgan v. Chiro One Wellness Centers LLC, No. 10-cv-1899, 2014 WL 642092, at *3 (N.D. Ill. Feb. 19, 2014).

Most courts do not apply the intermediate standard where, as here, discovery on the merits of the case remains pending or where the opt-in process and discovery from the class members are not complete.  See Babych v. Psychiatric Solutions, Inc., No. 09-c-8000, 2011 WL 5507374, at *3 (N.D. Ill. Nov. 9, 2011) ("Courts refuse to skip the first step of the conditional certification inquiry where the parties' agreed schedule indicates that there will be two stages of discovery."); Brown v. Club Assist Rd. Serv. U.S., Inc., 2013 WL 5304100, at *12 (N.D. Ill. Sept. 19, 2013) ("[I]t is not until the conclusion of the opt-in process and class discovery 'that the court more rigorously reviews whether the representative plaintiff and the

putative claimants are in fact similarly situated so that the lawsuit

may proceed as a collective action.'").  After all, the Court is

"assessing whether the plaintiffs who have opted in are in fact

'similarly situated' to the named plaintiffs."  Id.; Sylvester v.

Wintrust Fin. Corp., 2013 WL 5433593, at *3 (N.D. Ill. Sept. 30,

2013).

Despite the limited applicability of the intermediate approach

during Step 1, Defendants seek to apply a standard even more

stringent than the intermediate standard applied by most courts.

Defendant advocates for the application of the three Step 2 factors

at this stage of the proceedings.  See Bunyan v. Spectrum Brands,

Inc., No. 07-cv-0089, 2008 WL 2959932, at *8 (S.D. Ill. July 31,

2008).

The Court finds that application of the Step 2 factors during

Step 1 is inappropriate, even when the intermediate approach is

appropriate.  While the "lenient standard occasionally is heightened

if plaintiffs have been allowed extensive discovery, an intermediate

standard—not the decertification standard requested by [the

defendant]—applies."  Kurgan, 2014 WL 642092, at *3.  The

intermediate standard, while more stringent than the lenient first-

step standard, is less rigorous than the second-step decertification standard.  "Both sides' evidentiary submissions will be considered in determining whether there is a group of similarly situated employees who may be discovered by sending out an opt-in notice." Bergman v. Kindred Healthcare, Inc., 949 F. Supp. 2d 852, 856 (N.D. Ill. 2013).  But in "evaluating each side's submissions, it must be kept in mind that, despite the discovery that has been allowed, defendants still have greater access to evidence than plaintiffs and plaintiffs' modest showing need not be conclusive."  Id.  Even if a stricter standard is applied, Plaintiffs need only "make a modest 'plus' factual showing that there is a group of potentially similarly situated plaintiffs that may be discovered by sending opt-in notices."  Kurgan, 2014 WL 642092, at *3.

The Court need not resolve the parties' dispute as to the appropriate standard to apply at this step because Plaintiff has made the minimal "modest factual showing" and she has made a "modest plus" showing identifying potentially similarly-situated plaintiffs who may be discovered by sending opt-in notices. Plaintiff's Summary and Analysis of Voluminous Evidence (d/e 33-8) (hereinafter Data Analysis Summary) identifies instances of pay

discrepancies between male and female physician faculty employees within departments.  Plaintiff asserts that the pay differentials are the result of a discriminatory scheme effectuated through uniform processes including Defendants' Compensation Plan and unofficial policies described by Defendants' representatives' deposition statements.  (d/e 32-1, 32-5, 32-7).

B.  <u>Plaintiff has established that she and potential class members are similarly situated.</u>

Defendants argue that Plaintiff cannot show that she is similarly situated to other female physician faculty employees because each department and each division within each department involves different duties and procedures.  Defendants argue that Plaintiff does not share similar employment settings with potential claimants.

Defendants' assertions are premature.  Whether the potential plaintiffs share similar employment settings is more properly considered during Step 2, when the Court considers whether to certify the class or to decertify the conditional class.  <u>Wellens v. Daiichi Sankyo, Inc.</u>, No. 13-cv-581, 2014 WL 2126877, at *5 (N.D. Cal. May 22, 2014).  At Step 1, it is sufficient that Plaintiff has

shown "some factual nexus [that] connects her to other potential plaintiffs as victims of an unlawful practice."  Berndt, 2013 WL 3287599, at *6.

At Step 1, the factual similarity among the potential plaintiffs need not relate to job duties or circumstances.  Molina, 566 F. Supp. 2d at 786 ("The other employees need not be in the same identical job or situation.").  Plaintiff has set forth Defendants' Member Practice Agreement (d/e 32-2), which she asserts is signed by all physicians and which requires that they perform the same job duties involving patient, teaching, and administrative functions. For example, the nature of work for all surgeons includes—in addition to their surgical work—teaching, research, service components.  U.S. Dep't of Labor Decision and Order (Apr. 13, 2016) (d/e 45-1) at 6.  Plaintiff has established a sufficient basis to establish that female faculty physicians are similarly situated to Plaintiff for Step 1.  Whether it is fair to compare the salaries of women and men who are in different departments or subdivisions— when Plaintiff has provided evidence that the job descriptions for the three tiers of physicians are the same—is a question to be resolved at the second step of the certification process.

C.  Plaintiff's alleged common policy potentially violates the EPA.

Plaintiff alleges that physician faculty employees are subjected to common processes and policies regarding minimum qualifications and compensation decisions.  Plaintiff asserts that there is a single process by which compensation of new hires is determined and compensation is annually reassessed.  All physician faculty employees are compensated pursuant to the Compensation Plan.  Master Agreement (d/e 33 ex. 3); Cox Dep. 86-87 (d/e 33 ex. 1).  Plaintiff claims that newly hired physicians' salaries are recommended to and reviewed by SIU Healthcare, the Dean and Provost of SIU School of Medicine, and the Office of Management and Budget.  Existing employee faculty physician compensation is adjusted annually by a small, centralized group of decisionmakers called the Compensation Committee.  The compensation adjustment is then reviewed and approved by the Dean of SIU School of Medicine and the CEO of SIU Healthcare, who are currently the same individual.

Plaintiff further asserts that the only job titles for physician faculty employees are Professor, Associate Professor, and Assistant Professor.  Defendants' Faculty Guidelines (d/e 33 ex. 4) set forth

the minimum qualifications for each rank, which are the same across departments.  Upon hiring, all physician faculty employees are presented with the same agreement—the Member Practice Agreement—which sets forth duties and compensation.  (d/e 33 ex. 2).  All physician faculty employees also execute an Annual Compensation Agreement.  Plaintiff asserts that the terms of these agreements establish near uniformity as to key aspects of administration of the Compensation Plan.

Defendants contend that the Compensation Plan cannot be the unlawful policy that ties together the purported class because the plan is gender-neutral and is not facially illegal or discriminatory.  Defendant's interpretation of the relevant common policy is much narrower than Plaintiff's.  Plaintiff asserts that the applicable common policy includes both the Compensation Plan and an unofficial policy of Defendants—allegedly effectuated by the Compensation Committee, the Dean/CEO, and the Office of Management and Budget—to unfairly compensate women.  Plaintiff supports her allegation of an unofficial discriminatory process with a description of the process of compensation determinations, including the involved players and the layers of review, supported

by Defendants' agreements, policies, and deposition statements.

This showing is sufficient to demonstrate the existence or impact of

the alleged unofficial policy at Step 1.

D.  Plaintiff has set forth a sufficient evidentiary basis to establish a
potentially discriminatory practice.

In her Data Analysis Summary, Plaintiff asserts that for the

years from 2007 to 2016, the average total compensation of female

Associate Professors and Assistant Professors was over $62,000 less

each year than that of their male counterparts and the average total

compensation of Professors was approximately $45,000 less than

that of male Professors.  Plaintiff further alleges that in every year

from 2012 to 2016, in every department with a female physician, at

least one female in every rank was paid less than a male in a

corresponding rank in that department.  Plaintiff sets forth various

additional statistics that she argues support her contention that

Defendants discriminated by gender in compensation.

Defendants argue that the pay discrepancies exhibited by

Plaintiff's Data Analysis Summary can be accounted for by non-

discriminatory, gender-neutral explanations.  Defendants' Response

to Plaintiff's Motion for Conditional Collective Action Certification

and Judicial Notice (d/e 41) (hereinafter Response) at 20.

Defendants state that discrepancies among physician compensation amounts result not from a unified, discriminatory process, but are based on individualized factors taking into account the physicians' experience and seniority, the relevant market comps, the department/division's typical procedures, etc.  Response at 9.

Gender-neutral factors such as pooling agreements, call schedules, clinical productivity, administrative appointments, procedure type, clinical practice arrangement, and success of individual programs all affect physician compensation.

Defendants contend that this Court should not conditionally certify the collective action because the nature of each physician's work and the individualized factors contributing to compensation require an individualized inquiry into each plaintiff's compensation to determine whether discrimination was involved.  Defendants argue that the "case-by-case" analysis this case requires obviates a class and obliterates any judicial efficiency.  Defendants further argue that because Plaintiff has not shown disparate pay due to gender rather than because of gender-neutral factors, Plaintiff has not shown that potential plaintiffs are similarly situated as to a

common unlawful policy or plan.  Response at 7.

The issue Defendants raise as to the need for individualized inquiries is more appropriately addressed at the second step of FLSA certification.  See, e.g., Gilbert v. Citigroup, Inc., No. C–08–0385 SC, 2009 U.S. Dist. LEXIS 18981, at *10 (N.D. Cal. Feb. 18, 2009) ("Defendants' concern about individualized inquiries does not require the Court to deny conditional certification . . . . Under the two-stage certification procedure, Defendants can present this evidence and make these arguments as part of a motion to decertify the class once discovery is complete.").

Further, Plaintiff need not prove at this stage in the proceedings that pay discrepancies between men and women are due to discriminatory practices.  The Court does not assess the merits of the plaintiff's claim when determining whether to certify the collection action.  Nehmelman, 822 F. Supp. 2d at 751.  It is enough at Step 1 that Plaintiff has shown that there is a reasonable basis to conclude that there are similarly-situated class members affected by a common policy that potentially violates the EPA.  See Campeau v. NeuroScience, Inc., 86 F. Supp. 3d 912, 918 (W.D. Wis. 2015).  Nonetheless, the Court notes that whether or not

compensation is affected by individualized, gender-neutral factors, such circumstances do not preclude the possibility that compensation is also affected by gender discrimination.  Accepting that a physician's compensation is based on the variety of factors listed by Defendants, such circumstances do not preclude the possibility that female physicians are systematically paid less than their male counterparts even after the gender-neutral factors are considered.  While the existence of the individual factors may hinder Plaintiff's ability to prove her EPA claim, the merits of Plaintiff's case are not at issue at Step 1 of conditional certification of collective action.

Defendants also refute Plaintiff's claims by asserting that several female physicians earned more than men.  However, that in some years some subset of the potential plaintiffs may have earned more than certain comparator men would not undermine evidence that in other years, or portions of years, they have been paid less. Cf. Garner v. G.D. Searle Pharmaceuticals & Co., 802 F. Supp. 418, 423 (M.D. Ala. 1991) ("In a representative suit under the EPA, however, plaintiffs are not required to establish that the entire class of females has been victimized.").

E.  Plaintiff's Data Analysis Summary is proper at Step 1.

Defendants argue that Plaintiff may not rely on her Data Analysis Summary to support her motion for conditional certification because the summary is inadmissible because it is not supported by expert testimony as to methodology in violation of Fed. R. Evid. 702.  Response at 17.

District courts within the Seventh Circuit are divided on the question of whether declarations in support of a motion for conditional certification must comply with the Federal Rules of Evidence.  See Adair v. Wis. Bell, Inc., No. 08–cv–280, 2008 WL 4224360, at *8 (E.D. Wis. Sept. 11, 2008) (collecting cases).  Several courts have held that at Step 1, the plaintiff must set forth "admissible evidence that the potential class members are sufficiently similar to believe a collective action will facilitate efficient resolution of a legal dispute involving claims which share common questions and common answers."  Berndt, 2013 WL 3287599, at *7.  Defendants also attack counsel's methodology in analyzing the data.  Response at 18-19.  Defendants assert that Plaintiff included and excluded certain data from the analysis and that she applied inconsistent time periods and other parameters to

different data sets to support her position.

Given that the Court considers the Data Analysis Summary at this stage in the proceedings only for the purpose of completing Step 1 of the conditional certification determination, the Court will afford Plaintiff some leeway with her statements about the compensation of other employees.  Therefore, at this point in the proceeding, the Court will allow Plaintiff to support her motion for conditional certification with laymen calculations, since Plaintiff has provided some basis for that analysis—namely, that the supporting data is entirely from Defendants' production to Plaintiff.  Evidence adduced in support of Step 2 of the certification process, however, must fully comply with the rules of evidence.  See Campeau, 86 F. Supp. 3d at 918.

 F.  The absence of interest to opt-in by potential class members does not indicate that conditional certification is improper.

Defendants argue that conditional certification is improper because Plaintiff has failed to demonstrate that other employees desire to opt-in to this case.  While courts in the Fifth and Eleventh Circuits have required that, before a case can proceed as an FLSA collective action, a plaintiff must come forward with evidence that

there are other employees who desire to opt-in, see e.g., Dybach v.
Florida Dept. of Corrections, 942 F.2d 1562 (11th Cir. 1991);
Barten v. KTK & Assocs., Inc., 2007 WL 2176203, at *7 (M.D. Fla.
July 24, 2007), a number of courts have held that such a
requirement is in conflict with the Act's broad remedial goal.  See,
e.g., Heckler v. DK Funding, LLC, 502 F. Supp. 2d 777, 780.  Such
a rule would also interfere with the notification process that allows
the Court to supervise the issuance of a straightforward and
accurate notice because it would essentially force plaintiffs to
informally notify and solicit potential claimants.  For practicality
and remedial reasons, this Court rejects Defendants' implication
that Plaintiff has fallen short of her burden because there is no
evidence at this stage that there are other employees who desire to
opt-in.

## IV.  CONCLUSION

As detailed above, Plaintiff has set forth the requisite factual
showing that she and other similarly situated female employees
were subjected to a common policy and plan involving
discriminatory compensation practices by Defendants in violation of
the EPA.   Conditional certification of a collective action is

appropriate.  The Court GRANTS Plaintiff's Motion for Conditional

Collective Action Certification and Judicial Notice (d/e 32).

Defendants will have an opportunity to seek decertification of the

class at the conclusion of discovery.

It is therefore ORDERED as follows:

(1) The Court conditionally certifies a collective action by
Plaintiff and similarly situated members of the class pursuant to 29
U.S.C. § 216(b), defined as:

> All current and former female faculty physicians at
> SIU School of Medicine and SIU Physicians &
> Surgeons, Inc., also known as SIU Healthcare,
> within three years of September 28, 2017.

(2) The Court APPROVES Plaintiff's counsel as class
counsel for the collective action;

(3) The Court APPROVES Plaintiff Sajida Ahad, M.D. as
the named plaintiff for purposes of this collective action under
29 U.S.C. § 216(b);

(4) The Court APPROVES Plaintiff's Proposed Notice of
Pending Lawsuit (d/e 32-1);

(5) The Court AUTHORIZES Plaintiff to send the
approved notice to the class as defined above.


**ENTERED:  September 28, 2017**

**FOR THE COURT:**                              **s/ Sue E. Myerscough**
                                                **SUE E. MYERSCOUGH**
                                    **UNITED STATES DISTRICT JUDGE**