E-FILED
Monday, 02 October, 2017  02:51:17 PM
Clerk, U.S. District Court, ILCD

# Exhibit 1

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| SAJIDA AHAD, MD, on behalf of herself and all others similarly situated<br>      Plaintiff,<br>v.<br><br>BOARD OF TRUSTEES OF SOUTHERN ILLINOIS UNIVERSITY and SIU PHYSICIANS & SURGEONS, INC.,<br><br>      Defendants. | No.  15-cv-03308-SEM-TSH |

**PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF HER
MOTION TO BAR DEFENDANTS' RELIANCE ON UNDISCLOSED INFORMATION**

Plaintiff Sajida Ahad, M.D., by and through her attorneys and on behalf of herself and all others similarly situated, hereby replies to Defendants' Response to Plaintff's Motion to Bar Defendants' Reliance on Undisclosed Information and their Expert Report Based Thereon In Opposing Class Certification (Dkt. 52). In support of her original motion (Dkt. 48) and memorandum (Dkt. 49), Plaintiff states as follows:

**I.  INTRODUCTION**

Defendants oppose Plaintiff's Rule 37 motion by engaging in the worst kind of lawyerly semantics – parsing words beyond meaning – in hopes of concealing their failure to fulfill their discovery obligations.  Defendants would have this Court believe that, in a pay discrimination case, an employer can conceal total compensation data and factors on which it was based until after the Plaintiff's expert report is due, despite being asked for putative class members' physicians' salary and compensation information for each year of their employment.

Defendants make four key arguments for their failure to timely disclose witnesses and to produce compensation information by calendar year and physicians' division, grants, and

leadership positions such as "division chief." None of Defendants' arguments warrant denying Plaintiff's motion.

First, Defendants' argue the information they failed to produce was never requested by Plaintiff. But this "new" excuse appears nowhere in Wilson's February 10 letter except as it relates to "NIH Grants." (Dkt. 48-2, Pl.'s Ex. B). Closer examination of Plaintiff's requests and Defendants' responses show the information was requested.

Additionally, Defendants argue that they had no obligation to produce the requested information earlier because they did not intend to use that information until it was produced. But Defendants concede they failed to produce information contemporaneously with providing it to their own expert, notwithstanding their baseless invocation of the "attorney work product" doctrine. That alone shows Defendants failed to timely supplement their response.

Third, Defendants inconsistently claim that they did, in fact, produce the information Plaintiff sought in the form of physician compensation files and/or Plaintiff could have found the information from other sources. This argument is fundamentally inconsistent with Defendants' other contentions and, critically, is not supported by the facts. It does not excuse Defendants from failing to timely produce requested information in a data set, like the one Defendants provided to their own expert

Finally, with respect to witnesses who provided unverified information on which their expert relied, Defendants claim the witnesses were disclosed – pointing out a lone reference to their names in one of twenty-seven (27) written discovery responses, instead of any of the six (6) Rule 26 disclosures Defendants served. Again, Defendants' facts *support* Plaintiff's motion by demonstrating non-compliance with Defendants' discovery obligations, warranting Rule 37's *mandatory* prohibition on use of undisclosed information.

Defendants' response is also notable for Plaintiff's arguments they fail to address. First, Defendants do not claim Rule 37's preclusion of use of the information is optional – the limited legal authority they cite notes the mandatory nature of Rule 37's language. Additionally, Defendants do not claim it would be improper for the Court to ask the parties to identify portions of Defendants' expert report on which Defendants cannot rely or to determine fees and costs Defendants should pay *after* first determining whether Defendants violated Rule 37, as Plaintiff requested. Accordingly, the Court can and should order the parties to confer and present the Court with stipulations or disputes over implementation of relief, including portions of Defendants' experts report to be stricken and/or attorneys' fees and costs to be awarded.

## II.  ARGUMENT

### A. Plaintiffs' Discovery Requests Sought The Information At Issue And Defendants Failed To Produce It In A Timely Manner.

1.  "Calendar Year" Compensation Data

Defendants claim (Dkt. 52, p. 18) Plaintiff "never requested total compensation data by calendar year *only*." (emphasis added). But Plaintiff also never requested partial compensation or compensation by fiscal year. Plaintiff's requests broadly sought compensation, including all components thereof. Document Request 18 and Interrogatory 6 make clear Plaintiff sought "annual compensation" and "salary and compensation information for each year of employment." (Dkt. 48-7, Pl.'s Ex. G). In response to Request for Production 18, Defendants responded

> Defendants are producing Excel spreadsheets prepared in response to this request. Defendants *payroll database does not include items* I or M and to include such information would require the hand search of every current and former physician faculty member's personnel file, which request is unduly burdensome.

(Dkt. 48-7, Pl.'s Ex. G, pp. 6-7) (emphasis added).

3

As this response shows, Defendants *chose* to respond by creating a data set (i.e., excel files) based on fiscal years for the School of Medicine and SIU Healthcare and *chose* not to search for responsive information elsewhere in responding to Plaintiff's original request.

Defendants would have this Court believe that modeling Defendants' decision-making process requires analysis of "total compensation by calendar year" (argued at Dkt. 52, p. 17), even though SIU and SIU School of Medicine only maintain compensation data on a fiscal year basis (Dkt. 52-4, Wilson Decl. ¶¶ 4-5).  Additionally, Defendants would have this Court believe that Defendants did not realize that a dataset with total compensation by calendar year was necessary until January 2017 – years after the lawsuit challenging pay decisions was pending (Dkt. 52-4, Wilson Decl. ¶ 9).

According to Defendants, only then did Defendants' counsel determine "it was necessary to create a data set of total compensation for each relevant calendar year in order to explain how compensation is determined by Defendants." (Dkt. 52, p. 8).  Then that database was created "from information provided by Defendants" in 99 hours over four weeks. (Dkt. 52-4, Wilson Decl. ¶ 9).[1]

Defendants claim they had no obligation to create data with total compensation by calendar year, without noting they "created" the spreadsheets with compensation based on fiscal year in response to Plaintiff's requests for that same information.  Presumably, the newly produced calendar year compensation was created by extracting information from Defendants' records just like Defendants "created" the previously-produced data sets by compiling information from multiple sources, including payroll databases.  Defendants claim the

---

[1] In his declaration, Wilson concedes creating the data set to analyze total compensation by calendar year was his suggestion and Dr. Song agreed. (Dkt. 52-4, Wilson Decl. ¶9).  The facts leading to "creation" of the data Dr. Song analyzed should not be overlooked in evaluating her credibility and opinions in any future proceedings.

compilation of the calendar year information was "attorney work product" (Dkt. 52-4, Wilson Decl. ¶ 4) – an argument Plaintiff addresses separately below. But it was no different than the information Defendants chose to collect and produce in response to Plaintiff's requests.[2]

As Plaintiff alleges, Defendants initially chose to create spreadsheets with fiscal year compensation in response to Plaintiff's requests. But when they believed it benefited them, Defendants gathered additional, equally responsive information into a data set like the one Plaintiff requested and did not timely produce it. Defendants' response confirms that is what happened – resulting in Plaintiff unnecessarily expending tens of thousands of dollars analyzing earlier produced data.

      2.      "Division" and "Division Chief" Titles

Defendants explicitly concede they provided their expert with a database that included "division" and "division chief" title. (Dkt. 52-4, Wilson Decl. ¶ 9). Defendants do not argue that this information was not requested, nor could they. Both pieces of information were explicitly requested in Request for Production 18 and Interrogatory No. 6. (Dkt. 48-7, Pl's Ex. G).

Defendants also do not claim they did not maintain the information in electronic form and do not deny possessing "division" in a database of some form. Defendants only claim that they do not maintain a database that includes "*division title* for each physician faculty member." (Dkt. 52-4, Wilson Decl. ¶ 9) (emphasis added). Thus, with respect to "division" and "division chief" title, Defendants apparently could have identified and produced information in response to Plaintiff's original request – they simply chose not to do so.

---

[2] Wilson's declaration does not describe how Defendants created the originally produced data sets (i.e., excel spreadsheets) with fiscal and calendar year information and department, but not division. But Defendants' responses to Document Request 18 and Interrogatory No. 7 (Dkt. 48-7, Pl's Ex. G), the notes to the spreadsheets produced in response in those requests (attached hereto as Plaintiff's Exhibit H), and Defendants' response to Interrogatory No. 10 (Dkt. 52-2, Defs' Ex. B) show information in those datasets was compiled from multiple sources.

Defendants claim Dr. Sharp should have extracted that information from physicians' compensation files, but elsewhere concede those files do contain all information necessary to do so. (Dkt. 52, p.7, n. 2) (noting the files contain "much of the information" requested, but not all of it). Notably, Wilson's declaration does *not* attest that Defendants created the database provided to Dr. Song from those compensation files; it was created from different responsive information provided by Defendants. (Dkt. 52-4, Wilson Decl. ¶ 9). This proves Defendants knew this information was requested, possessed it but chose not to compile it until they wanted to use it.

2. <u>Grant Data</u>

Defendants claim Plaintiffs never requested "grant" or "NIH grant" information, consistent with Wilson's February 10 letter. But Defendants acknowledge (Dkt. 52, p. 4) that "sources of funding" and "guarantees that ensure a particular salary is paid" were factors identified by Cox-Largent in her December 2, 2016 declaration. Inconsistently, those factors were not included in Defendants' response to Interrogatory No. 4 identifying factors that affect compensation.[3]

Plaintiff explicitly requested that supplemental information because grants or NIH grants are a source of funding that could help ensure a particular salary is paid. As such, it falls under the requests in Interrogatory No. 6 and Document Request No. 18. But, as with other types of requested information, Defendants claimed: "Defendants do not maintain a 'database' of NIH grants that could be readily produced to Plaintiff." (Dkt. 52, p.1 9).[4] Per Wilson's declaration, Defendants made that claim shortly before or while creating the data set Plaintiff was requesting.

---

[3] These inconsistencies should not be overlooked in assessing Cox-Largent's credibility in future proceedings.
[4] Here, too, Defendants do not deny possessing the information in some database or electronic form.

6

Here again, Defendants collected the data and produced a data set when it behooved them to do so.

### B. Defendants' Belated Assertion Of "Attorney Work Product" Protection Does Not Show Its Failure To Produce Requested Information Was Justified.

Defendants claim the newly created data set was "attorney work product," but factual data responsive to discovery requests is not protected by the "attorney work product" doctrine. The core of the doctrine consists of "the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." *Lee v. Chi. Youth Ctrs.,* 304 F.R.D. 242, 244 *citing to* F.R.C.P. 26(b)(3)(B).

In responding to discovery requests, parties have a duty to conduct reasonable searches of its electronic records and databases. *Kay Beer Distrib. v. Energy Brands, Inc.,* No. 07-C-1068, 2009 U.S. Dist. LEXIS 130595, at *14 (E.D. Wis. June 10, 2009). Regarding data compilations, the Seventh Circuit explained "when the data can as a practical matter be made usable by the discovering party only through respondent's devices, respondent may be required to use his devices to translate the data into usable form." *Crown Life Ins. Co. v. Craig*, 995 F.2d 1376 (7th Cir. 1993) *citing to* The Advisory Committee Notes on 1970 Amendment to F.R.C.P. 34(a).

Here, Defendants produced Plaintiff's requested information on demand when Defendants' counsel wanted to do it. But the case law and F.R.C.P. 34(a) establish Defendants' duty to translate its data into a usable form to answer *Plaintiff's* discovery requests, too. The process of doing so is not "attorney work product" as Defendants demonstrated initially by producing compensation data created using virtually the same process.

Indeed, the "attorney work product" doctrine does not apply because Plaintiff requested factual information – not Defendants' counsel's mental impressions or legal theories. The "calendar year" compensation records, division titles, and grant data was clearly within

7

Defendants' knowledge at the time of Plaintiff's request. The belatedly produced data came from Defendant's business records, not Defendants' counsel's mental impressions or legal theories. Since facts are not covered by the attorney work product doctrine, Defendants had no legitimate basis for its failure to timely and completely answer Plaintiff's requests.

In sum, Defendants cannot claim "attorney work product" protection over responsive materials. Here, Defendants chose not to produce responsive information until it benefited them to do so, clearly flouting their obligations under Rules 26(a)(1), Rule 26(e) and Rules 33 and 34. The consequence of that conduct under Rule 37 is the inability to rely on the information not produced or supplemented in accordance with the rules.

### C. Defendants' Reference To Witnesses In Discovery Responses Does Not Excuse Their Failure To Disclose Witnesses Pursuant To Rule 26(a)(1).

Defendants claim their failure to identify witnesses was harmless because Pence and McDunnough were identified in response to an interrogatory asking Defendants to describe their efforts to search for responsive documents and information in answering Interrogatory No. 10. (Defs' Ex. B, p. 14-16). But that response does not disclose these individuals as witnesses on whom Defendants will rely and, thus, does not satisfy Rule 26(a)(1)'s disclosure obligation. Were that identification sufficient, Defendants would not have supplemented their Rule 26(a)(1) disclosures by identifying Pence and McDunnough specifically. That failure is what prejudiced Plaintiff as described in her memorandum.

Plaintiff did not make false statements in her motion, as Defendants claim (Dkt. 52, p. 24). Plaintiff never stated the witnesses were not referenced in any discovery responses or documents produced. Indeed, virtually all of Defendants' administrative or physician employees have been identified in that fashion. Plaintiff only stated they were not disclosed *as witnesses*. (Dkt. 49, p. 6) (identifying witnesses and not being disclosed in Rule 26 disclosures).

Accordingly, Defendants' request for fees should be denied, and Plaintiff's motion should be granted.

## III. CONCLUSION

Like the bulk of Defendants' memorandum and exhibits, Defendants' response to Interrogatory No. 10 confirms what Plaintiff's motion contends happened.  Defendants refused to produce requested, responsive information when Plaintiff sought it, but worked diligently to provide it to its own expert when they deemed it necessary to do so.  The Federal Rules do not allow Defendants to pick and choose when they will comply with their discovery obligations; they must diligently search for and produce requested, responsive information when the request is made – not when it behooves them to do so.

Pursuant to Rule 37, the Court should bar Defendants from relying on improperly withheld information and any portions of Dr. Song's expert report relying on it for purposes of opposing class certification.  Plaintiff also respectfully requests the Court order Defendants to pay expert costs and attorneys' fees attributable to Defendants' conduct.  Should the Court grant Plaintiff's motion, Plaintiff respectfully requests the Court order the parties to confer and present the Court with stipulations or disputes over implementation of relief, including portions of Defendants' experts report to be stricken and/or attorneys' fees and costs to be awarded.

Respectfully submitted,

Plaintiff Sajida Ahad, M.D., on behalf of
herself all others similarly situated,

| /s/ J. Bryan Wood | /s/ Michael F. Brown |
|---|---|
| One of Plaintiff's Attorneys | One of Plaintiff's Attorneys |

J. Bryan Wood (ARDC #6270845)
The Wood Law Office, LLC
303 W. Madison St., Suite 2650
Chicago, IL 60606
bryan@jbryanwoodlaw.com
Phone: (312) 554-8600
Fax: (312) 577-0749

Michel Brown
DVG Law Partner LLC
4321 W. College Avenue, Suite 200
Appleton, Wisconsin 54914
mbrown@dvglawpartner.com
Phone: 920-757-2488
Fax: 920-273-6177

**PROOF OF SERVICE**

      The undersigned certifies that the foregoing Plaintiff's Reply Memorandum in Support of Her Motion to Bar Defendants' Reliance on Undisclosed Information and Their Expert Report Based Thereon in Opposing Class Certification was served upon the following counsel for Defendants in the above matter on October 2, 2017 by filing it via the Court's electronic case filing system

Served upon:

Thomas Wilson
Jessica L. Galanos
HeplerBroom, LLC
4340 Acer Grove Drive, Suite A
Springfield, IL 62711
Thomas.wilson@heplerbroom.com
Jgalanos@heplerbroom.com
(217)528-3674

                                                  By: _/s/ J. Bryan Wood_