# IN THE UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS
# SPRINGFIELD DIVISION

| | | |
|---|---|---|
| SAJIDA AHAD, MD, on behalf of herself and all others similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 15-cv-3308 |
| BOARD OF TRUSTEES OF SOUTHERN ILLINOIS UNIVERSITY and SIU PHYSICIANS & SURGEONS, INC., | ) ) ) ) ) | |
| Defendants. | ) ) | |

## OPINION

SUE E. MYERSCOUGH, U.S. District Judge.

The cause before the Court is Plaintiff's Motion to Bar
Defendants' Reliance on Undisclosed Information and Their Expert
Report Based Thereon in Opposing Class Certification (d/e 48),
pursuant to Federal Rule of Civil Procedure 37(c). Defendants
oppose the Motion and request that the Court order Plaintiff to pay
Defendants' attorney's fees and expenses incurred in responding to
the Motion. See Defs. Resp. (d/e 52).

For the reasons stated herein, Plaintiff's Motion is DENIED.

Defendants' request for fees and expenses is also DENIED.

## I.   BACKGROUND

Plaintiff Sajida Ahad, M.D. alleges gender-based pay discrimination on her behalf and a class of female physicians employed by Defendants.  Plaintiff alleges that Defendants paid Plaintiff and other female physicians substantially lower compensation than male physicians for the same or similar work. See Am. Compl., (d/e 31).  Defendants deny these allegations.  See Answer to Am. Compl. (d/e 39).  Magistrate Judge Schanzle-Haskins bifurcated discovery in this case between matters relating to the merits and matters relating to class certification.  See Order Regarding Scheduling (d/e 25).  Under the scheduling order, the parties were to complete class certification fact discovery by September 12, 2016.  Id.

The parties exchanged Rule 26 initial disclosures in April 2016.  See Defs. Resp., Ex. A (d/e 52-1).  Plaintiff served her initial interrogatories and requests for production on Defendants in July 2016.  See Defs. Resp., Exs. B and C (d/e 52-2, 52-3).  The Defendants responded to those requests on August 3, 2016.  Id.

Particularly relevant to this motion is Plaintiff's Document Request

18 and Defendants' response. Plaintiff's Document Request 18,

reads:

> Provide a computer-readable database (or databases) listing all physician faculty members who were affiliated with [Defendants] or who sought employment, promotion, or higher compensation from Defendants at any time from January 1, 2006 until the present date. Please include all of the following information for each such person:
>
> a. Full name;
> b. Social security number or other unique identifier;
> c. Gender;
> d. Current or most recent office location, business address and telephone number at Defendants;
> e. Current or last known home address, telephone number and e-mail address;
> f. Tenure;
> g. Name of each position held as an employee of Defendants;
> h. Current or most recent position, title or office with Defendants;
> i. Years of education and experience;
> j. Start and end dates for each such position;
> k. Termination dates;
> l. Reasons for termination;
> m. Performance evaluation ratings; and
> n. Compensation information, including:
>> i. Annual compensation;
>> ii. Each element of annual compensation (yearly base salary, clinical compensation, bonus, etc.);
>> iii. The formula for computation of each employee's bonus and salary;
>> iv. Stating salary and salary for each successive position and/or year of employment.

See Defs. Resp., Ex. C at 16 (d/e 52-3). Defendants answered the

response stating:

> Defendants are producing Excel spreadsheets prepared in
> response to this request. Defendants payroll database does
> not include items I or M and to include such information
> would require the hand search of every current and former
> physician faculty member's personnel file, which request is
> unduly burdensome. . . . To the extent that Plaintiff has
> additional questions regarding individual physician faculty
> members identified on the spreadsheet, Defendants will review
> those requests on a case-by-case basis.

See Id. at 16-17. Defendants' production in response included

several spreadsheets of compensation information. Notably, the

physicians' total compensation is the result of two payments: an

academic base salary paid by Southern Illinois University School of

Medicine ("SIU-SOM") and a clinical compensation paid by

Southern Illinois University Healthcare ("SIU-HC"). See Defs. Resp.

at 3 (d/e 52). Defendants produced spreadsheets tracking

academic base salary by fiscal year and clinical compensation by

calendar year and advised Plaintiff of the different tracking. Id.

Defendants also produced faculty salary surveys from the

Association of American Medical Colleges, organizational charts for

SIU-HC and SIU-SOM, and lists of supervisors, department chairs,

and faculty members. Id.

In November and December of 2016, Defendants also produced SIU-HC compensation files for individual physician faculty members at the request of Plaintiff. Id. at 5. On January 9, 2017, Plaintiff's counsel contacted Defendants' counsel to resolve discrepancies between compensation files and compensation spreadsheets. Id. On February 2, 2017, Plaintiff's counsel again contacted Defendants' counsel requesting supplementation of prior discovery responses, including, in relevant part, the division and dates and National Institute of Health ("NIH") Grants by year for all physician-members of SIU Healthcare. See Pls. Mot., Ex. A (d/e 48-1). Notably, Defendants' employees are divided into seven departments, which are then divided into a total of 42 divisions. See Defs. Resp. at 19 (d/e 52). Defendants responded to Plaintiff's request on February 9, 2017, stating that certain of Plaintiff's requests, including information on NIH Grants by year are not responsive to Plaintiff's document requests or interrogatories; that division information and other requested information is located in the SIU-HC compensation files; and that Defendants do not maintain a "database" that contains the information requested. Pls.

Mot., Ex. B (d/e 48-2). In Plaintiff's Motion, she did not reference any other requests she made for supplemental information.

Plaintiff's expert, Dr. Sharp, submitted his expert report on March 10, 2017. He analyzed the compensation components separately (academic base pay and clinical compensation) because the spreadsheets Defendants produced used different fiscal years to track the pay, as described above. See Plaintiff's Memorandum in Support of Motion ("Pls. Memo.") at 6-7 (d/e 49). He also analyzed pay by department and not division, because the data spreadsheets Defendants produced did not contain information on divisions. Id. Dr. Sharp was deposed on April 7, 2017. Id. at 6.

Defendants' expert, Dr. Song, filed her expert report on May 8, 2017. Plaintiff's Motion contends that this report relied on information that Defendants had not previously produced, including: (1) information on compensation determined by calendar year, not fiscal year; (2) information about physicians' positions, departments and divisions (including information regarding division chiefs and faculty grants); (3) information from witnesses not previously disclosed by Defendants; and (4) information about how

the compensation was allegedly determined for specific physicians. See Pls. Memo. at 6 (d/e 49).

Plaintiff contacted Defendants on May 9, 2017, after receiving the expert report, and asked Defendants whether the noted information had been produced prior to May 8, 2017. See Pls. Mot., Ex. E (d/e. 48-5). Defendants responded that, "[a]ll of the documents identified by Dr. Song in her report including those from her own research or requests have been provided to you." Id. at 7. On May 15, 2017, Plaintiff again asked for further clarification on whether the documents had been previously produced but did not receive a response. Id. at 6. Plaintiff's expert filed her rebuttal report on July 14, 2017. See Pls. Mot., Ex. F (d/e 48-6). Plaintiff then filed this Motion on August 10, 2017 seeking sanctions pursuant to Federal Rule of Civil Procedure 37(c).

In Defendants' Response to Plaintiff's Motion, Defendants argue that all of the information was timely produced and therefore Plaintiff cannot prove an underlying violation that would warrant sanctions under Rule 37(c). See Defs. Resp. (d/e 52). Defendants explain that data tracking total compensation by year was created after Defendants' counsel decided in December 2016 that having a

dataset that tracks total compensation by calendar year would aid in the analysis.  See Defs. Resp., Ex. D: Wilson Decl. at 4 (d/e 52-4).  Dr. Song agreed and also requested that the dataset include division title for all physician faculty members in the data set.  Id. Using information previously produced, as well as additional information provided by Defendants, Defense counsel created a dataset of this information that was completed on April 7, 2017.  Id. Defendants argue that this data was attorney work product until their expert report was disclosed.  Defs. Resp. at 18, 22-23 (d/e 52). Defendants further argue that this and any other information was not specifically requested and did not need to be produced until their expert relied on it.  Id. at 14.  Additionally, Defendants argue that the witnesses the expert spoke to were disclosed in their interrogatory responses and therefore were known to Plaintiff.  Id. at 24-25.

## II. JURISDICTION AND VENUE

This Court has subject matter jurisdiction because Plaintiff's claims are based on federal law.  See 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States").  The

Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367. Venue is proper because the events giving rise to the claim occurred in Sangamon County, Illinois. See 28 U.S.C. § 1391(b)(2) (a civil action may be brought in a judicial district where a substantial part of the events or omissions giving rise to the claim occurred).

## IV. LEGAL STANDARD

Under Federal Rule of Civil Procedure 37(c), "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c). "[I]n addition to or instead of this sanction," the Court is given the option "on motion and after giving an opportunity to be heard" to "order payment of the reasonable expenses, including attorney's fees caused by the failure," "inform the jury of the party's failure," and "impose other appropriate sanctions." Id. "The purpose of Rule 37(c) is to prevent the practice of 'sandbagging' an opposing party with new evidence." Marvel Worldwide, Inc. v. Kirby, 777 F. Supp. 2d 720, 727 (S.D.N.Y. 2011) (internal citations

omitted), aff'd in part, vacated in part sub nom. Marvel Characters, Inc. v. Kirby, 726 F.3d 119 (2d Cir. 2013).  The threshold question in a Motion for Rule 37(c) sanctions, therefore, is whether a party has failed to provide information or identify a witness as required by Rule 26(a) or (e).

Federal Rule of Civil Procedure 26(a)(1) requires initial disclosures of: "the name and, if known, the address and telephone number of each individual likely to have discoverable information— along with the subjects of that information—that the disclosing party may use to support its claims or defenses;" and "a copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses."  Fed. R. Civ. P. 26(a)(1)(A)(i)-(ii).  Rule 26(a)(2) governs disclosure of expert witnesses and states that experts who provide written reports must include, among other information, "a complete statement of all opinions the witnesses will express and the basis and reasons for them."  Fed. R. Civ. P. 26(a)(2).

Under Federal Rule of Procedure 26(e), "[a] party who has made a disclosure under Rule 26(a)—or who has responded to an interrogatory, request for production, or request for admission— must supplement or correct its disclosure or response . . . in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A). "A reasonable interpretation of Rule 26(e)(1)(A) and its reference to "incomplete or incorrect" disclosures presumes that the 'additional or corrective information...otherwise made known...during the discovery process' will provide the functional equivalent of the information required under Rule 26(a)(1)(A)." <u>Aldrich v. Indus. Cooling Sols.</u>, No. 14-CV-03206-CMA-KMT, 2016 WL 879675, at *2 (D. Colo. Mar. 7, 2016), <u>citing</u> <u>L-3 Commc'ns Corp. v. Jaxon Eng'g & Maint., Inc.</u>, 125 F. Supp. 3d 1155, 1168–69 (D. Colo. 2015) (holding that "merely pointing to places in the discovery where the information was mentioned in passing is not sufficient."). <u>See</u> <u>also</u> <u>Wallace v. U.S.A.A. Life Gen. Agency, Inc.</u>, 862 F. Supp. 2d 1062, 1067 (D.

Nev. 2012) (finding a party's identification of an individual in response to the opposing party's interrogatories insufficient to satisfy the disclosure requirements of Rule 26(a) because, among other reasons, the party did not identify the individual as someone with information that the party may use in establishing its case).

Federal Rule of Civil Procedure 34 governs the production of documents and electronically stored information. In general, a party may request "any designated documents or electronically stored information—including ...data or data compilations—stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form." Fed. R. Civ. P. 34(a)(1)(A). Further, for electronically stored information:

> Unless otherwise stipulated or ordered by the court . . . (i) A party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request; (ii) If a request does not specify a form for producing electronically stored information, a party must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms; and (iii) A party need not produce the same electronically stored information in more than one form.

Fed. R. Civ. P. 34(b)(1)(E).

However, there are limits to the scope of discovery, including limits on the discoverability of work product. "Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3)(A).

If the Court determines that a party has failed to provide information or identify a witness as required by Rule 26(a) or (e), the Seventh Circuit has held that the exclusion of non-disclosed evidence is "mandatory under Rule 37(c)(1) unless non-disclosure was justified or harmless." Musser v. Gentiva Health Servs., 356 F.3d 751, 758 (7th Cir.2004). See also Rossi v. City of Chicago, 790 F.3d 729, 738 (7th Cir. 2015).

## V. ANALYSIS

Plaintiff has identified four categories of information that it contends Defendants did not timely disclose: (1) information on compensation determined by calendar year, not fiscal year; (2) information about physicians' positions, departments, and divisions (including information regarding division chiefs and faculty grants); (3) information from witnesses not previously disclosed by

Defendants; and (4) information about how the compensation was allegedly determined for specific physicians.  See Pls. Memo. at 6 (d/e 49).  The parties agree that the Defendants had a duty to disclose this information, but dispute the necessary timing. Plaintiff argues that production was required earlier pursuant to Rule 26(e) because Plaintiff requested that information in her discovery requests and/or because they were documents or witnesses Defendants intended to use to support its defenses. Defendants argue that Plaintiff did not request this information in her discovery requests, that it did not exist until a later time, and/or that any further duty to supplement initial disclosures did not arise until their expert report was produced, pursuant to Rule 26(a)(2).  As explained below, the Court finds that no discovery violations have occurred and that there is no basis to award costs or attorney's fees to either party.

### A. Defendants Timely Produced Information on Compensation Determined by Calendar Year as Opposed to Fiscal Year.

Plaintiff alleges that Defendants did not timely produce a spreadsheet that tracked the two components of compensation using the same fiscal year that Defendants' expert was provided on

April 7, 2017.  <u>See</u> Pls. Memo at 4-5 (d/e 49).  Defendants argue

that Plaintiff never requested information regarding "total

compensation," that the data did not exist until it was compiled and

created by Defendants and their counsel, that there was no duty to

create it, and that the total compensation spreadsheet was work

product until it was disclosed as part of their expert's report.  <u>See</u>

Defs. Resp. at 17-18 (d/e 52).  In reply, Plaintiff argues that total

compensation was requested in Document Request 18(n)(i), which

sought "annual compensation."  Pls. Reply at 3 (d/e 53).

As an initial matter, the Court finds that Defendants did not

have a duty to create a spreadsheet or database that tracked total

compensation when one did not exist.  Plaintiff's Document Request

18, as quoted above, asked only for "annual compensation"

contained in a database.  <u>See</u> Defs. Resp., Ex. C at 16 (d/e 52-3).

That Defendants had the ability at the time they responded to the

initial discovery requests to spend hours pulling payroll records

from both SIU-HC and SIU-SOM and creating a dataset in one

spreadsheet is irrelevant.  Defendants were only required to

produce records as kept in the normal course of business.  <u>See</u> <u>Mir</u>

<u>v. L-3 Commc'ns Integrated Sys., L.P.</u>, 319 F.R.D. 220, 227 (N.D.

Tex. 2016); <u>Hallmark v. Cohen & Slamowitz, Midland Funding LLC</u>, 302 F.R.D. 295, 299 (W.D.N.Y. 2014) ("It is basic that in responding to a document production request, pursuant to Fed. R. Civ. P. 34(a) . . . a party is not required to create documents meeting the document requests, only to produce documents already in existence.") (internal citations omitted).

Plaintiff argues in reply that Defendants "created" the initial compensation spreadsheets they disclosed and chose not to create one that tracked annual compensation. Pls. Reply at 4 (d/e 53). This argument ignores the fact that Defendants do not track compensation jointly, so the combined dataset did not exist. Pulling information from a database and organizing it into a readable spreadsheet is a far different task than compiling and creating the dataset itself. Rule 34(b)(1)(E) only obligates a party to "produce documents as they are kept in the usual course of business or [ ] organize and label them to correspond to the categories in the request." Fed. R. Civ. P. 34(b)(1)(E). Here, Defendants organized and labeled the original two tracking spreadsheets as required by Rule 34(b)(1)(E), but they were not

under a further obligation to <u>create</u> a new dataset if it was not kept in the usual course of business.

Upon receiving the discovery responses, Plaintiff could have asked Defendants to supplement their responses with the underlying payroll data that could be used to create a total compensation dataset. As Plaintiff argues in her Reply, however, Plaintiff does not believe that an analysis of total compensation is necessary to show pay discrimination. <u>See</u> Pls. Reply at 4 (d/e 53) ("Defendants would have this Court believe that modeling Defendants' decision-making process requires analysis of "total compensation by calendar year."). Defendants did not have a duty to create a total compensation spreadsheet and Plaintiff has not pointed to a discovery request where they requested the underlying payroll data that could be used to create such a dataset.

The Court also finds that once the total compensation spreadsheet was created, it was protected as work product done by an attorney under Rule 26(b)(3)(A) until their expert report was disclosed. While the facts underlying their new dataset were clearly discoverable, Defendants did not have an obligation to turn over documents containing the underlying data absent a request.

Therefore, the Court finds that no discovery violation has occurred with regard to the total compensation data tracked by calendar year.

Further, even if Defendants had an obligation to produce the total compensation spreadsheet to Plaintiff as soon as it was produced to their expert, their delay of one month hardly could have harmed Plaintiff. By April 7, 2017, the time total compensation spreadsheet was completed and produced to Defendants' expert, Plaintiff's expert had already completed his initial report and was being deposed. See Pls. Memo at 4-5 (d/e 49). That Defendants produced the spreadsheet on May 8, 2017 as opposed to April 7, 2017 caused no harm even if they had had a duty to disclose it one month earlier.

**B. Defendants Timely Produced Information About Physicians' Positions, Departments, Divisions, and Faculty Grants.**

Plaintiff next contends that Defendants did not timely produce information regarding departments, divisions, faculty grants, and division chiefs. Plaintiff claims this information was requested in her discovery requests, particularly in Document Request 18(n) and Interrogatory 6. Pls. Reply at 6 (d/e 53).

With regard to information about departments, divisions, and division chiefs, Defendants argue that this information was contained within the produced documentation, specifically the compensation files, and/or publically available information. See Defs. Resp. at 21 (d/e 52). Plaintiff does not dispute this contention in her reply brief. Plaintiff would have preferred this information to have been contained in an electronic database, but the Defendants did not maintain such a database and had no duty to create one. See e.g., Mir v. L-3 Commc'ns Integrated Sys., L.P., 319 F.R.D. 220, 227 (N.D. Tex. 2016) ("As a general matter, a party cannot invoke Rule 34(a) to require another party to create or prepare a new or previously non-existent document solely for its production."); Harris v. Advance Am. Cash Advance Centers, Inc., 288 F.R.D. 170, 174 (S.D. Ohio 2012) (holding that Defendant was not required to compile lists of requested information when such information did not exist in such a format). Instead, Defendants provided to Plaintiff the same information that Defendants later used to compile the information for their expert. Defendants were not required to reproduce the information they later compiled into a spreadsheet. No discovery violation has occurred with respect to the information

regarding Physicians' positions, departments, and divisions. Further, like the total compensation spreadsheet, this spreadsheet was protected work product under Federal Rule of Civil Procedure 26(b)(3)(A) until the expert report was produced.

The data underlying the grant information, however, was not previously produced. Defendants argue that Plaintiff's discovery requests did not ask for information on grants. <u>See</u> Defs. Resp. at 19-20. The Court agrees with Defendants that, while Plaintiff's February 2, 2017 email requested some information regarding grants and cited to specific discovery requests, the requests in the email regarding grants did not plausibly fall within the cited discovery requests. Additionally, Plaintiff's email requesting supplemental production only asked for NIH grant information that was located in a computer readable database, which Defendants did not maintain. <u>See</u> Pls. Memo., Ex. A (d/e 48-1).

Plaintiff's reply brief states that "Plaintiff explicitly requested [supplemental information on grants] because grants or NIH grants are a source of funding that could help ensure a particular salary is paid. As such, it falls under the requests in Interrogatory No. 6 and Document Request No. 18." Pls. Reply at 6 (d/e 53). However,

upon reading these two requests, <u>see</u> Defs. Resp., Ex. C at 16 (d/e 52-3) and Defs. Resp., Ex. B at 9 (d/e 52-2), the Court finds it unclear what language Plaintiff could be relying on to make such an assertion. The Court agrees with the Defendants that the Plaintiff has not cited to any discovery request that plausibly asked for information on faculty grants.

Further, Plaintiff has not shown that Defendants made misleading statements when they said they did not maintain NIH grant information in a database. Again, this information was not required to be produced until Defendants' expert report that relied on this data was produced. Therefore, the Court finds that no discovery violations have occurred with regard to information about physicians' positions, departments, divisions, or faculty grants.

### C. Defendants Timely Disclosed Witnesses Relied Upon by Their Expert.

Plaintiff next argues that Defendants were required to formally disclose witnesses that Defendants' expert consulted with in order to make his report, specifically David Pence and Sylvia McDonnough. <u>See</u> Pls. Memo. at 6 (d/e 49). Defendants argue that these individuals were in fact disclosed because their names were

included in an interrogatory response asking for information regarding how Defendants searched their records and who was involved in the searches. See Defs. Resp. at 24 (d/e 52). In reply, Plaintiff argues that "virtually all of Defendants' administrative or physician employees have been identified in that fashion," and that Defendants were required to disclose these individuals as witnesses. Pls. Reply at 8 (d/e 53).

As Defendants argue, they did not need to formally disclose these witnesses under Federal Rule of Civil Procedure 26(e)(1)(A) if the witnesses were "otherwise made known" during discovery in a manner that provided "the functional equivalent of the information required." See Aldrich, 2016 WL 879675, at *2. However, merely identifying individuals in a response to interrogatories, as Defendants did, does not necessarily provide the functional equivalent. See Wallace, 862 F. Supp. 2d 1062, 1067. This is because such a disclosure does not identify the individuals as someone the Defendants "may use to support its claims or defenses." See Id.; Fed. R. Civ. P. 26(a)(1).

With regard to McDonnough, her disclosure in response to the interrogatories did appear to provide the functional equivalent of

the information required. In the interrogatories, McDonnough was identified as "a former HR employee that retired and was brought in to help with data retrieval and reports since the AIS system is an older system and has been customized over the years. This makes retrieving information very difficult and Ms. McDonnough had in depth working knowledge of the various nuances of the system." See Defs. Resp., Ex. B at 15 (d/e 52-2). In the Defendants' Supplemental Disclosures provided contemporaneously with their expert report on May 8, 2017, Defendants' have formally disclosed McDonnough as someone who will have knowledge of "the maintenance of payroll records and production of compensation data in this case." See Defs. Resp., Ex. A at 40 (d/e 52-1). As McDonnough's specific knowledge was fully identified in the interrogatory response, no further disclosure was necessary.

However, Pence's name was only included in a list of individuals who helped gather the relevant data and other information in response to the discovery requests. See Defs. Resp., Ex. B at 14 (d/e 52-2). This disclosure did not give Plaintiff any indication of what information Pence may have that Defendants

may rely on to support their claims.

Still, Rule 37(c) sanctions are not warranted because the Court finds Defendants' failure to disclose Pence was substantially justified and likely harmless. It is within this Court's discretion whether the Rule 26 violation was substantially justified or harmless. David v. Caterpillar, Inc., 324 F.3d 851, 857 (7th Cir. 2003). When determining whether the late disclosure was substantially justified, "the inquiry focuses upon the actual ability to timely disclose or else upon whether the party had a legal basis to argue that disclosure was not actually required." United States v. Dish Network, L.L.C., No. 09-3073, 2016 WL 29244, at *8 (C.D. Ill. Jan. 4, 2016) citing Bull v. Bd. Of Trs. Of Ball State Univ., No. 1:10-cv-00878-JMS-TAB, 2012 WL 76137, at *2 (S.D. Ind. Jan. 10, 2012). The relevant factors the Court considers to determine whether a violation is harmless include "(1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier

date." <u>Dish Network, L.L.C</u>, 2016 WL 29244, at *8.

While the Court did not agree with Defendants, they did have a legal basis to argue that disclosure was not actually required and the Court finds their delayed disclosure was substantially justified. Additionally, the Court finds this violation was likely harmless. Notably, Plaintiff does not address whether the Defendants' failure to timely disclose Pence as a witness caused Plaintiff any harm. Plaintiff has not indicated that they would have wanted to depose Pence. The Court finds this significant, as an adequate remedy here could have been to allow Plaintiff to depose Pence prior to submitting her rebuttal report had Plaintiff filed this motion earlier. Additionally, the Court does not find that Defendants were acting in bad faith, especially since Pence was at least identified in the interrogatories. Therefore, the Court finds that Rule 37(c) sanctions are not mandated and will not impose such sanctions.

### D. Defendants Timely Disclosed Information About How the Compensation was Allegedly Determined for Specific Physicians.

Plaintiff argues that Defendants did not timely disclose information regarding compensation for specific physicians, citing to specific paragraphs in Dr. Song's report. <u>See</u> Pls. Memo. at 6.

Plaintiff has not made a claim that this information was responsive to a discovery request, but rather appears to be arguing that Defendants were required to supplement their initial disclosures pursuant to Federal Rule of Civil Procedure 26(e) more timely than they did. The Court notes that in many of the paragraphs to which Plaintiff refers, Dr. Song has cited to discovery materials produced to Plaintiff and to publically available information. <u>See</u> Pls. Mot., Ex. D (d/e 48-4). Defendants respond that this information was specifically requested from their expert after reviewing the data and asking for clarification. <u>See</u> Defs. Resp. at 25-26 (d/e 52). Defendants argue that Plaintiff's expert was equally capable of noting the discrepancies and following up with Defendants regarding these discrepancies through Plaintiff's counsel. <u>Id.</u> As evidence of Plaintiff's ability to do this, Defendants note that Plaintiff did request clarification regarding some discrepancies in the data. <u>Id.</u> Defendants further argue that it is not unusual or a violation of discovery rules for an expert to rely upon information not previously produced in discovery. <u>Id.</u>

Essentially, Defendants' expert asked questions about the data and received answers that were not immediately provided to

Plaintiff. Plaintiff argues this is a discovery violation. To the extent Plaintiff is arguing that witnesses the expert relied on should have been disclosed at an earlier date, that alleged discovery violation is discussed above. Plaintiff appears to be suggesting that each time Defendants' expert asked a question about the data, Defendants should have provided both Plaintiff and the expert with the response contemporaneously. Plaintiff has cited no law to support this alleged obligation, and the Court refuses to read such a requirement into the discovery rules. The Court finds that Plaintiff has not alleged a discovery violation with respect to information regarding compensation decisions for specific physicians.

## VI. REQUESTS FOR COSTS AND ATTORNEY'S FEES

Both Plaintiff and Defendants have requested that the Court award costs and attorney's fees associated with this motion. Plaintiff's request for costs and attorney's fees pursuant to Rule 37(c) is denied because she has not proven an underlying discovery violation that would warrant Rule 37(c) sanctions. Defendants also seek sanctions pursuant to Rule 37(c), but have not alleged or proven any discovery violations and, therefore, their request is also denied. The Court further notes that Defendants did not

meaningfully respond to Plaintiff's emails on May 8, 2017 and May 15, 2017, which sought to address this issue outside of the Court. As such, any costs they incurred as a result of this motion potentially could have been avoided by responding to Plaintiff's emails. Therefore, the Court is denying any and all requests for costs and attorney's fees.

## VII. CONCLUSION

For the reasons stated, Plaintiff's Motion to Bar Defendants' Reliance on Undisclosed Information and Their Expert Report Based Thereon in Opposing Class Certification (d/e 48) is DENIED. Defendants request for fees and expenses is also DENIED.

**ENTERED: January 24, 2018**

**FOR THE COURT:**

        *s/ Sue E. Myerscough*
**SUE E. MYERSCOUGH**
**UNITED STATES DISTRICT JUDGE**