IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD, ILLINOIS

| | |
|---|---|
| SAJIDA AHAD, MD, on behalf of herself and all others similarly situated, ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | Cause No. 15-cv-03308 |
| BOARD OF TRUSTEES OF ) SOUTHERN ILLINOIS UNIVERSITY ) SIU PHYSICIANS & SURGEONS, INC., ) d/b/a SIU HEALTHCARE ) ) | |
| Defendants. ) | |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO DISMISS OPT-IN PLAINTIFF BAUER**

Defendants, the Board of Trustees of Southern Illinois University ("SIU-SOM") and SIU Physicians & Surgeons, Inc. d/b/a SIU Healthcare ("SIU-HC"), by and through their attorneys, HeplerBroom, LLC, state as follows for their Memorandum of Law in Support of Motion to Dismiss Opt-in Plaintiff Bauer:

1. **Background**

On September 29, 2017, the Court issued an Opinion and Order granting Plaintiff's Motion for Conditional Collective Action Certification and Judicial Notice (d/e 53). The Court conditionally certified "a collective action by Plaintiff and similarly situated members of the class pursuant to 29 U.S.C. §216(b)," with the class defined as:

1

>All current and former female faculty physicians at SIU School of Medicine and SIU Physicians & Surgeons, Inc., also known as SIU Healthcare, within three years of September 28, 2017 (d/e 53, p. 21).

The Notice approved by the Court (d/e 53, p. 21) stated, in part, as follows:

>**The Consent Form must be sent to Plaintiffs' Counsel as soon as possible if you want to join. If you do not respond within 60 days, you may not be able to recover all of the wages you may be owed. …**
>
>If you do not join this action, you will not be bound by any ruling, favorable or unfavorable. If you decide not to join this action, you are free to pursue Equal Pay Act claims on your own. …
>
>If you choose not to join in this action or file your own action, your potential claims under the Equal Pay Act may later be barred by the statute of limitations. (d/e 32-1, p. 4) (emphasis in original).

Plaintiff's counsel, on October 12, 2017, caused the notice of collective action to be mailed to 128 prospective collective action members. *See* (d/e 86-2). Three individuals opted into the class: (1) Jan Rakinic on October 27, 2017 (15 days later) (d/e 66); (2) Christina M. Vassileva on October 31, 2017 (19 days later) (d/e 67); and (3) Erica Rotondo on January 5, 2018 (d/e 79) (85 days later). Nearly 11 months after the Notice of collective action was mailed (10 months and 19 days, or 46 weeks and 1 day, or 323 days),[1] on August 31, 2018, a Plaintiff Consent Form was filed by Carol Bauer (d/e 99).

Between Rotondo filing her Plaintiff Consent Form and Bauer filing hers, a significant amount of activity occurred in the case related to collective action certification.

---

[1] Calculated at https://www.timeanddate.com/date/duration.html, from and including October 12, 2017 and to, but not including, August 31, 2018.

The parties, in an agreed motion, requested the Court to suspend the deadline for Defendants to move to decertify, stating that the notice encouraged opt-in Plaintiffs to respond within 60 days, or by December 11, 2017.[2] (d/e 56). The Court granted that motion and ordered the parties to file a proposed schedule for briefing collective action decertification by January 18, 2018. Text Order, October 18, 2017. The parties later submitted a schedule that was approved by the Court, but subsequently requested another adjustment to the briefing schedule. (d/e 84). In that motion, both parties acknowledged "the need to permit sufficient time to conduct discovery and obtain transcripts of depositions to be used in the collective action decertification proceedings." *Id.* ¶ 4. The Court granted the motion (Text Order, April 20, 2018), but the parties again needed additional time to conduct written and oral discovery related to decertification. (d/e 85).

Thus, on May 2, 2018, the parties submitted a further proposed decertification discovery and briefing schedule which discussed the status of written discovery and depositions of the opt-in plaintiffs. *Id.* The Court granted the motion in a May 4, 2018 Text Order, and the parties then proceeded to complete depositions of the opt-in plaintiffs and brief the issue of decertification of the collective action, with the final brief (Defendants' Reply) filed on August 17, 2018. (d/e 86, d/e 93, d/e 97). The briefing regarding decertification of the collective action focused on whether Plaintiff Ahad and the three opt-

---

[2] The parties noted that December 11, 2017 was not a deadline but rather was the date by which opt-in plaintiffs were encouraged to reply. (d/e 56, p. 5 n. 1)

3

in Plaintiffs are "similarly situated," and the discovery conducted with respect to all four Plaintiffs was extensively cited throughout. *See generally* (d/e 86, d/e 86-1, d/e 97).

The local newspaper published articles regarding this case on October 13, 2016, October 28, 2017, and February 10, 2018. Exhibit A. The SIU School of Medicine website provides, in part, the following information regarding Dr. Bauer:

> Dr. Carol Bauer is Professor and Chair of the Division of Otolaryngology. She specializes in chronic diseases of the ear and directs the SIU Cochlear Implant program and Hearing and Balance Center at SIU School of Medicine. She leads a team of hearing professionals in the Center who are dedicated to enhancing the hearing, speech and language opportunities for the people of central and southern Illinois.
>
> Dr. Bauer received her medical degree from the University of Iowa College of Medicine in Iowa City in 1989 and completed residency training at the University of Iowa and a fellowship in Neurotology at Baylor College of Medicine in Houston. She joined the Division of Otolaryngology at SIU School of Medicine in 1995 and was appointed Chair of the division in 2014.
> …

Exhibit B.

2. **Applicable Law**

In a collective action, the potential plaintiffs must receive "accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170, 110 S. Ct. 482, 486, 107 L. Ed. 2d 480 (1989). 45 days has been held to be an appropriate period "given that the Notices of Consent forms must be mailed and the opt-in plaintiffs must consider whether they wish to join this lawsuit, make an informed decision, and

return the Notice of Consent forms all in a timely manner within the specified time frame." *Blake v. Batmasian*, 208 F. Supp. 3d 1292, 1294 (S.D. Fla. 2016).

"The FLSA does not specify when a person must opt in to a collective action. The court sets that deadline." *Kitagawa v. Drilformance*, LLC, 2018 WL 690835, at *1 (S.D. Tex. Feb. 1, 2018) (citing 29 U.S.C. §§ 216(b), 255, 256). "Nor does the FLSA provide a standard for courts to decide whether to include opt-in plaintiffs who file consent forms after the court-imposed deadline." *Id.* "Courts have broad discretion to determine whether to permit late opt-in filers to join a collective action." *Id.* "Although the caselaw on this issue is wide-ranging, courts have generally decided the question by balancing various combinations of the following factors: (1) whether 'good cause' exists for the late submissions; (2) prejudice to the defendant; (3) how long after the deadline passed the consent forms were filed; (4) judicial economy; and (5) the remedial purposes of the FLSA." *Ruggles v. Wellpoint, Inc.*, 687 F. Supp. 2d 30, 37 (N.D.N.Y. 2009). *See also Kitagawa*, 2018 WL 690835, at *1 (citing cases). Each factor is discussed below.

3. **Argument**

Plaintiff Carol Bauer's Equal Pay Act claim should be dismissed, without prejudice. Allowing her to remain in this case at this juncture prejudices Defendants and would result in delay in the case. Conversely, dismissal from this case in no way prejudices Bauer. The applicable factors favor disallowing Bauer's addition and dismissal of her claim. The Court should, in its discretion, dismiss Bauer from the case without prejudice.

### A.  There is no "good cause" for Bauer's late consent.

The Notice was sent on October 12, 2017 and encouraged potential plaintiffs to respond within 60 days.  Opt-in Plaintiffs Rakinic and Vassileva promptly provided their consent forms in October 2017.  Rotondo's consent form was filed outside the 60-day window, but was submitted within three months after the Notice was sent, on January 5, 2018.  Bauer was employed by Defendants long before and during the entire pendency of this lawsuit.  Exhibit B (she joined SIU-SOM in 1995 and has worked there continuously since.)  The articles published in the Springfield newspaper discussed the Court's conditional collective action certification and the opportunity for others to join the lawsuit (October 28, 2017 article) as well as the fact that Rakinic, Vassileva, and Rotondo had joined the case (February 10, 2018 article).  Exhibit A.  Under these circumstances, Defendants are unaware of any "good cause" that would justify Bauer waiting nearly 11 months after the Notice was sent to file her consent form.

### B.  Defendants are prejudiced if Bauer is allowed to opt in.

After a sufficient amount of time had passed from the Notice, written discovery and depositions were conducted with respect to the three opt-in Plaintiffs.  Bauer, however, did not file her consent form until two weeks *after* the final brief on the issue of decertification was filed.  (d/e 97) (reply brief filed August 17, 2018); (d/e 99) (Bauer consent form filed August 31, 2018).  As noted above, the decertification briefing relied upon the depositions of Ahad and the three opt-in Plaintiffs.  Of course, because of her procrastination, no

discovery has taken place with respect to Bauer, and the decertification briefing did not discuss her circumstances.

If Bauer is allowed to join the case at this juncture, additional discovery would need to be conducted, and the decertification briefing would need to supplemented. At the second step of certification, the Court is to conduct a "stringent inquiry" as to whether the named Plaintiff and the opt-in Plaintiffs are, in fact, "similarly situated" as required by the FLSA. *Weil v. Metal Techs., Inc.*, 260 F. Supp. 3d 1002, 1020 (S.D. Ind. 2017). In its briefing, Defendants have already compared the positions, academic compensation, clinical compensation, and other circumstances of Ahad, Rakinic, Vassileva, and Rotondo to demonstrate that they are not "similarly situated."

If Bauer joins the case, the decertification analysis would not be complete without examination in further briefing of her written discovery responses, her deposition testimony, and pertinent documentation regarding her circumstances so that she too could be compared to the other Plaintiffs. This would likely delay the decertification decision for several months. Defendants would be prejudiced because they already completed written and oral discovery on this subject and drafted their briefing based on that discovery. Defendants will also incur significant additional fees and expenses to conduct the further discovery and prepare additional briefing. A delay in the Court's ruling on decertification of the collective action also prejudices Defendants.

The substantial prejudice to Defendants by allowing Bauer to join as a Plaintiff at this late date contrasts severely with the effect on Bauer if she is not allowed to join. Bauer is not prejudiced at all if her claim is dismissed without prejudice. She is free to file her own lawsuit to pursue any claims she believes she has. The Notice itself specifically advised Bauer that "if you do not join this action, you will not be bound by any ruling, favorable or unfavorable. If you decide not to join this action, you are free to pursue Equal Pay Act claims on your own." (d/e 32-1, p. 4). She loses nothing by the Court disallowing her joinder. Bauer's significant delay in attempting to join this action should result in her being required to file her own separate lawsuit if she wants to proceed with her claim. Accordingly, this factor favors dismissal of Bauer.

### C.  Bauer did not submit her consent form in a timely fashion.

As discussed above, potential plaintiffs in a collective action should be given sufficient time to consider the Notice and make an informed decision as to whether to participate, and 45 days has been found to be a sufficient period for potential plaintiffs to ponder joining the suit. Bauer had plenty of time to make an informed decision as to whether to join this case. While there was no deadline, the Notice encouraged potential plaintiffs to respond within 60 days, or by mid-December 2017. (d/e 32-1, p. 4) As noted above, Rotondo joined the case just outside the 60-day period, on January 5, 2018 (d/e 79), but Defendants did not object because they had not been prejudiced at that point. 10 months and 19 days, or 46 weeks and 1 day, or 323 days after the Notice was sent is well past the

8

period that Bauer needed to make an informed decision as to whether to opt in as a Plaintiff. In the meantime, the case proceeded on the issue of collective action decertification. Bauer's unnecessarily tardy filing of her consent form favor her dismissal.

**D.  Judicial economy favors dismissal of Bauer.**

Bauer may argue that her filing a separate lawsuit does not favor judicial economy when she could instead join this lawsuit. It does not promote judicial economy, however, to allow another plaintiff to join a collective action nearly 11 months after the Notice was sent. It does not promote judicial economy to require additional discovery on a subject where discovery has already been completed as to four Plaintiffs. It does not promote judicial economy to require additional briefing on a topic that has already been fully briefed and is ripe for decision by the Court.

Moreover, it does not promote judicial economy to allow Bauer to join the other Plaintiffs where none is "similarly situated" in any event. Even only considering the information from the SIU School of Medicine's website, it appears that Bauer is not "similarly situated" to any other Plaintiff.

Bauer is a Professor and the Chair of the Division of Otolaryngology. Exhibit B. No other Plaintiff is a Division Chair and no other Plaintiff worked in this Division. Bauer "specializes in chronic diseases of the ear and directs the SIU Cochlear Implant program and Hearing and Balance Center at SIU School of Medicine." *Id.* This is a different specialty than

any other Plaintiff and, therefore, Bauer's actual work varies from all other Plaintiffs, and different considerations would factor into Bauer's compensation structure.

Further, Bauer would be required to identify (and Defendants would be required to refute) the male employees earning higher wages for allegedly performing equal work requiring substantially similar skill, effort, and responsibilities. *Cullen v. Ind. Univ. Bd. of Trustees*, 338 F.3d 693, 698 (7th Cir. 2003). Specifically, Bauer would need to identify which male physicians she believes were performing "equal work," with whom she allegedly shared a "common core of tasks" and where purportedly "a significant portion of the two jobs is identical." *Id.*

As examined in prior briefing, all Plaintiffs have each already identified different sets of claimed comparator physicians. (d/e 86-1, p. 13-17); (d/e 97, p. 12-13). Due to Bauer's dissimilar position as compared to all other Plaintiffs, she almost certainly would identify a different set of comparator physicians than the other Plaintiffs.

Arguably, Division Chairs at a medical school, like "[t]he jobs of the managers of the different parks in the sprawling Indianapolis park system," are not truly the "proper domain of the Equal Pay Act" because the Divisions, like the parks, "are so different from one another." *Sims-Fingers v. City of Indianapolis*, 493 F.3d 768, 771–72 (7th Cir. 2007). This point aside, only one other Plaintiff identified a Division Chair as a claimed comparable physician. *See* (d/e 86-1, p. 14) (Vassileva, who did not hold any administrative position, identifies Dr. Hazelrigg, Chair of the Division of Cardiothoracic surgery.) Thus, the

addition of Bauer would add a *fifth* separate set of evidence to the case, again defeating the purpose of a "collective action."

Proceeding as a collective action, and allowing Bauer to join the collective action, would result in five simultaneous but separate trials where all five Plaintiffs would have to separately prove the details of her individual job and the details of the purported "equal" jobs of five different sets of male employees.  Defendants would need to offer a unique set of evidence for each of the five Plaintiffs as part of their defense, including all the circumstances surrounding the background, credentials, hiring, job duties, performance, and compensation of every Plaintiff *and* every alleged comparator for each Plaintiff, which already were all different with the existing Plaintiffs, and another separate group would be added for Bauer.

"Decertifying a collective action is appropriate, however, when a jury trial would consist of a large number of separate mini-trials and would consume significant judicial time and resources."  *Reed v. County of Orange*, 266 F.R.D. 446, 462 (C.D. Cal. 2010). Thus, allowing Bauer to proceed as an opt-in Plaintiff and adding another separate mini-trial to the case which would consume additional judicial time and resources (when the trial is supposed to proceed on a "collective" basis) does not promote judicial economy, and this factor also supports dismissal of Bauer.

**E.  The remedial purpose of the FLSA does not overcome the other factors.**

"The FLSA is remedial in nature and must be construed to effect Congress' purpose to protect the nation's workers." *Villareal v. El Chile, Inc.*, 776 F. Supp. 2d 778, 784 (N.D. Ill. 2011).  "However, neither the remedial purposes of the FLSA, nor the interests of judicial economy, would be advanced if we were to overlook facts which generally suggest that a collective action is improper." *West v. Border Foods, Inc.*, 2006 WL 1892527, at *7 (D. Minn. July 10, 2006).  Moreover, the purpose of a "collective action" is to present "collective evidence" "on a class-wide basis" and to "perform a uniform analysis on the entire class" "without individualized evidence."  *Blair*, 2018 WL 1523101, at *21-23, 27.

Here, Bauer is not "similarly situated" to any other Plaintiff; no two Plaintiffs are "similarly situated;" the Plaintiffs cannot use "collective evidence" "on a class wide basis" to attempt to prove their claims; and there is no way to "perform a uniform analysis on the entire class" "without individualized evidence."  The proposed addition of Bauer as a Plaintiff only serves to reinforce these points.  Given that all of the other factors favor dismissal of Bauer as a Plaintiff, the "remedial purpose" of the FLSA is no basis to allow her to remain in the case, particularly given that she is free to file her own separate case if she desires.  Accordingly, the applicable factors strongly favor dismissal of Bauer from this case, and Defendants' motion should be granted.

4. **Conclusion**

WHEREFORE, Defendants respectfully request that the Court enter an Order granting their Motion to Dismiss Opt-in Plaintiff Bauer, dismissing all claims by Dr. Carol A. Bauer without prejudice, and granting such other and further relief in Defendants' favor as the Court deems proper.

                Respectfully Submitted,

                Board of Trustees of Southern Illinois University and SIU Physicians & Surgeons, Inc., d/b/a SIU Healthcare, Defendants

                By: */s/ Thomas H. Wilson*

Thomas H. Wilson, #6202141
HeplerBroom, LLC
4340 Acer Grove Drive
Springfield, IL 62711
Ph:     217-528-3674
Fax:    217-528-3964
Email: thw@heplerbroom.com

**PROOF OF SERVICE**

I hereby certify that on October 9, 2018, I caused to be electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing(s) to all counsel of record.

| | |
|---|---|
| Michael F. Brown | J. Bryan Wood |
| DVG LAW PARTNER LLC | THE WOOD LAW OFFICE, LLC |
| P.O. Box 645 | 303 W. Madison St. |
| Neenah, WI 54957 | Suite 2650 |
| Email: mbrown@dvglawpartner.com | Chicago, IL 60606 |
| *Attorney for the Plaintiff* | E-mail: bryan@jbryanwoodlaw.com |
| | *Attorney for the Plaintiff* |

/s/ *Thomas H. Wilson*